UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

          Plaintiff,

                                 Case No. 17-cr-113-pp

   v.

DANTE WILLIAMS,

          Defendant.

**ORDER OVERRULING DEFENDANT'S OBJECTION TO JUDGE JONES'S
ORDER DENYING MOTION TO SEVER (DKT. NO. 391)**

I.    <u>Procedural History</u>

In June 2017, the grand jury returned a two-count indictment charging twenty-one defendants—including Dante Williams—with conspiracies to possess with intent to distribute and to distribute heroin, cocaine and methamphetamine. Dkt. No. 1. The defendant was charged only in Count Two, which alleged that between January 1, 2016 and June 20, 2017, he conspired with defendants Fernando Reyes, Juan Avina, Bryan Banks, Tommie Cole and Alejandro Castaneda to distribute heroin and cocaine. <u>Id.</u> at 2.

Count One charges seventeen defendants with conspiring to possess with intent to distribute heroin, cocaine and methamphetamine over roughly the same period covered by Count Two. Dkt. No. 1 at 1. Two of those seventeen defendants—Juan Avina and Bryan Banks—also were charged in the Count Two conspiracy. <u>Id.</u> at 2.

In March of this year, ahead of the then-scheduled May 20, 2019 jury trial set by Judge J.P. Stadtmueller (to whom the case was assigned at the time), the defendant filed two motions—a motion to dismiss the indictment or, in the alternative, to adjourn the trial, dkt. no. 375, and a motion to sever Count Two from Count One, dkt. no. 376. Three other defendants filed similar motions. In the motion to dismiss, the defendant argued that he could not be ready for trial by May 20, 2019, because he had not yet received interpretations of the Spanish-language wiretap recordings which could impact his client and because of issues in his personal life. Dkt. No. 375. As for the motion to sever, the defendant "adopt[ed] . . . by reference" arguments made by co-defendant Kristian Yanez (charged only in Count One). Dkt. No. 376 at 1.

Yanez argued that the indictment violated Federal Rule of Criminal Procedure 8(a), because there was no permissible basis for joining the charge in Count One with the charge in Count Two. Dkt. No. 372 at 3. He also argued that under Rule 8(b), it was impermissible for him to be joined with the four non-overlapping defendants charged in Count Two. <u>Id.</u> at 3-4. He "challenge[d] the government to cite a case allowing the joinder of multiple conspiracies in which each of the two conspiracies name defendants who aren't charged in the other and where the face of the indictment provides no over-arching link between those conspiracies." <u>Id.</u> at 6. He concluded that "the absence of any alleged schematic connection between Yanez and the four Count Two defendants who aren't named in Count One means that the cited condition precedent [participation in a common scheme or plan] is lacking." <u>Id.</u> at 8.

In his motion to sever, the instant defendant did not re-frame the Rule 8 misjoinder argument in the context of his circumstances. Dkt. No. 376. He cited no authority, mentioned no cases. Defense counsel instead indicated that he'd done some research, and that "the gist of the research done so far indicates that the trial court's decision on a motion to sever is to be based in part on weighing the danger of unfair prejudice to defendants and also in part on judicial economic considerations such as duplication of proof in having to present the same evidence in multiple trials." Id. at 2.

The defendant then made his argument:

> The defendant notes that, on the face of the indictment, thee [sic] is little indication that the evidence as to alleged Conspiracy One will be the same as the evidence in alleged Conspiracy Two. As is frequently true in drug distribution conspiracy cases, the discovery in this case is voluminous, and one would expect the introduction of evidence surrounding the allegations in each count to be very time consuming at trial. But, since these are allegedly two separate conspiracies, the Court can except there to be little, if any at all, overlap between the evidence related to Conspiracy One and that related to Conspiracy Two. Thus, severance will not be an inefficient use of the resources of the court or counsel.

> Also, there is substantial danger that the introduction of an overwhelming amount of evidence related to Conspiracy One will unavoidably cause confusion in the juror's minds as to the distinction between Conspiracies One and Two, and that this will cause undue prejudice to [the defendant] and his defense. The jury will have to sift through untold amounts of evidence relative to the alleged criminal activities of fifteen defendants with whom [the defendant] has no alleged conspiratorial connection at all. But two of the defendants are allegedly part of both alleged conspiracies. This voluminous introduction of evidence of other, irrelevant, other alleged criminal acts not related to the allegations against [the defendant], during [the defendant's] trial, creates a strong risk of producing in the jurors' minds the impression that [the defendant] is somehow associated with criminal activity that he had nothing to do with.

Id. at 2-3.

The government's response didn't mention or address the defendant's arguments, probably because the defendant relied on those made by co-defendant Yanez. Dkt. No. 378. As to Yanez, the government argued that neither he nor the other Count One defendants who sought severance "argue[d] that the disparity in the weight of evidence against some of the codefendants could deny him the right to a fair trial nor do they allege that trying both counts together would lead to jury confusion." Id. at 5. The government asserted that any fear that evidence as to one defendant might "spill over" to another, or confuse the jury, "can be mitigated sufficiently when there is ample evidence to convict the moving defendant and when the jury is given instructions to assess each defendant and count individually." Id. at 6, citing United States v. Alviar, 573 F.3d 526, 539 (7th Cir. 2009). The government concluded by stating that "[t]he two conspiracy counts in the indictment overlap and involve a common scheme or plan such that the defendants are properly joined." Id.

On March 22, 2019, Magistrate Judge David Jones issued several orders. One denied the defendant's motion to sever. Dkt. No. 381. Another recommended to Judge Stadtmueller that he deny the four pending motions to dismiss and left to Judge Stadtmueller's discretion whether to grant the requests to adjourn the trial. Dkt. Nos. 383-384.

Regarding the defendant's motion to sever, Judge Jones reviewed the face of the indictment and concluded that the two counts overlapped

temporally (both alleged a conspiracy that took place between January 1, 2016 and June 20, 2017), geographically (in the Eastern District of Wisconsin) and substantively (both alleged conspiracies to possess with intent to distribute heroin and cocaine), and that they had overlapping members (Avina and Banks). Dkt. No. 381 at 5. For that reason, Judge Jones concluded that Counts One and Two were not mis-joined under Rule 8(a). Id. For the same reason, Judge Jones concluded that the defendants were not mis-joined under Rule 8(b). Id. Finally, Judge Jones addressed the defendant's argument that the "overwhelming amount of evidence and the disparity in the weight of the evidence against defendants in Count One versus Count Two will lead to jury confusion." Id. at 6. Judge Jones agreed with the government that that fact alone did not warrant severance, citing United States v. Serpico, 320 F.3d 691, 696 (7th Cir. 2003), and agreed that the trial court could mitigate any jury confusion with an instruction that the jury must consider the evidence separately as to each defendant. Id.

On April 3, 2019, the defendant filed an objection "to the report and recommendation of the magistrate concerning defendant's pretrial motions." Dkt. No. 391. He linked this objection to Dkt. No. 384, Judge Jones's ruling on his motion to dismiss the case or adjourn the trial (Dkt. No. 375), *not* Judge Jones's ruling on his motion to sever. (In fact, in his order denying the defendant's motion to dismiss/adjourn the trial, Judge Jones indicated in a footnote that the defendant had "filed a 'bare bones' severance motion, *see* ECF No. 376, which" Judge Jones indicated he had addressed in a separate order.

Dkt. No. 384 at 2 n.1). The objection focused on the various reasons that the defendant could not be ready for trial by the scheduled May 20, 2019 trial date. He referred to severance only once in the four-page objection; at the end of page 3, the defendant argued that the court could accommodate his request for a delay "in various ways," including granting his motion to sever Count One from Count Two and granting his motion to sever him from his co-defendants. Id. at 3. He did not assert that Judge Jones's ruling on his severance motion was erroneous; he did not even mention the ruling.

As of the date the defendant filed the objection, the assigned trial judge was Judge Stadtmueller, the trial was scheduled for May 20, 2019, and all the defendants (except those who have not yet been arrested) were in trial posture. The status of the case has changed since then. In mid-April 2019, executed plea agreements began to appear on the docket, likely because Judge Stadtmueller had ordered that any defendant wishing to "resolve this case short of trial and remain eligible for acceptance of responsibility credit under applicable United States Sentencing Guidelines, while at the same time obviating the necessity of the parties preparing and filing a final pretrial report," had to file plea agreements by the close of business on April 15, 2019. Dkt. No. 356 at 7. In the past six months, five of the six defendants charged in Count Two—Reyes (dkt. nos. 497, 603), Avina (dkt. no. 414), Banks (dkt. no. 412), Cole (dkt. no. 415) and Castaneda (dkt. no. 435)—have pled guilty. The defendant is the only one of the six people charged in Count Two who remains in a trial posture. Though a couple of the seventeen defendants charged in

Count One never have been arrested, all but two of the others have pled guilty. The only Count One defendants headed for trial are Luis Gomez and Pablo Hidalgo-Sanchez.

The final pretrial conference ahead of the May 20, 2019 trial took place on May 14, 2019 before Judge Stadtmueller. Dkt. No. 480. The next day, the three defendants scheduled for trial—the defendant, Gomez and Hidalgo-Sanchez—filed motions asking Judge Stadtmueller to recuse himself. Dkt. Nos. 488 (Gomez), 489 (Hidalgo-Sanchez) and 492 (Williams). Defendant Hidalgo-Sanchez explained in detail the reason for the motions:

> Following the final pretrial yesterday, Asst. United States Attorney Mario Gonzales informed the defendants by email, in vague terms, that the United States Marshal had developed information concerning an, "[A]n alleged threat made by Luis Gomez toward a federal judge and his family in the current case." Further, according to Gonzales, "The magistrate and district judge were notified of the nature of the threat. I cannot comment further as the investigation is ongoing."
>
> In a telephone conversation, Gonzales said that there was currently no evidence that Hidalgo-Sanchez played any role in making this threat. However, both Gomez and Hidalgo-Sanchez are housed at the Kenosha County Detention Center. The government's theory of this prosecution is that Gomez and Hidalgo-Sanchez were closely-linked leaders of the conspiracy.
>
> At a motion hearing before Magistrate Jones yesterday morning, the court indicated that it was aware of this incident, but was satisfied that he (Magistrate Jones) was not the target of the threat. It stands to reason, then, that the Hon. J.P. Stadtmueller was the target of the threat.

Dkt. No. 489 at 1-2. In a footnote, the motion specified that "[i]n oral discussions concerning the matter, Mr. Gonzales further indicated that the nature of the threat was a kidnapping of a family member of the judge." Id. at 1

n.1. The motion asked the court to order the government to turn over all information it had about the alleged threat, and asked that Judge Stadtmueller either recuse himself or sever the defendant's trial from that of Gomez. Id. at 2. In support of the alternative request for severance, the defendant argued that he expected the government to try to prove at trial that Gomez and the defendant were "closely linked," and expressed concern that a jury "will hold Gomez's bad behavior against [the defendant]." Id. at 5-6.

Judge Stadtmueller granted the three motions for recusal, dkt. no. 493, and the case was reassigned to the undersigned—Judge Pepper—on May 15, 2019. This court removed the May 20, 2019 trial date from the calendar, dkt. no. 494, and adjourned the trial to November 4, 2019, dkt. no. 520.

On October 18, 2019, this court conducted the final pretrial conference ahead of that November 4, 2019 trial. While the court was discussing its trial practices, counsel for defendant Gomez told the court that his client had asked him to demand that the government produce evidence relating to the allegation that Gomez had made a threat against one of the predecessor judges on the case, so that counsel could present that evidence to the jury at trial and the defendant then could rebut it. Counsel stated that he'd told the defendant that he would not do this, because the court was unlikely to allow the government to present evidence of the alleged threat at trial and because if *defense counsel* presented it, it could be harmful to the defendant. Despite counsel having told defendant Gomez that he would not do what the defendant had asked, counsel reported that defendant Gomez had persisted and was angry with counsel for

not doing as he asked. The court confirmed with the prosecutor that he would not present any evidence at trial about the alleged threat. The prosecutor explained that the allegations were still under investigation, and that he could not provide defense counsel with any details for that reason. He noted, however, that the allegations were just that—allegations. He was not certain that there *had* been a threat, and had notified defense counsel (after being notified by the marshal, who'd also notified Judges Jones and Stadtmueller) because he was obligated to do so. The court told Gomez that it would not allow the government to mention the alleged threats or present any evidence about them.

Gomez continued to confer with his lawyer, who reported that Gomez felt that the government had engineered the threat allegations in order to delay Gomez's trial by forcing Judge Stadtmueller off the case. The court explained that it was this court—Judge Pepper—who had decided to delay the trial, to give the interpreter time to complete the work on the recorded conversations. The court also advised Gomez that it would not allow him, or his lawyer, to present evidence about the alleged threat, because it was not relevant to the drug charges that were the subject of the trial. The defendant persisted, through counsel and despite counsel's attempts to explain, in asserting that he wanted to present the evidence. Finally, the court offered that after the trial was over, it would be willing to hear the defendant's explanations about the fact that he had not threatened anyone. The defendant responded that he would accept the court's offer.

At that point, counsel for defendant Hidalgo-Sanchez reported that his client wanted the court to sever his case from that of Gomez, because he was concerned that if anything about the threats came out at a join trial, that evidence or information would prejudice Hidalgo-Sanchez with the jury. The court told counsel that he could file a motion if he believed it appropriate. The court noted, however, that it had just stated on the record that it was not going to allow anyone—the government, defense counsel or the defendant—to refer to or present evidence about or comment on the allegations that Gomez had threatened anyone at the November trial, which meant that Hidalgo-Sanchez would not be prejudiced by something that wasn't going to happen. Counsel for the defendant also asked to be allowed to consider whether to file a motion to sever. The court responded that counsel could consider as much as he liked, but noted that the court was scheduled to start a two-week trial on October 23, 2019 (the trial has since been stayed) and encouraged all counsel to file any motions as soon as possible.

On October 23, 2019, counsel filed a memorandum in support of his March 8, 2019 motion to sever—the one Judge Jones denied. Dkt. No. 607. The memorandum asserts that the defendant timely objected to Judge Jones's ruling on the motion to sever, but that the objection "remain[s] unaddressed." Id. at 1. It asks the court to consider the defendant's original motion to sever, "which has never been fully addressed." Id. at 2. The defendant renews all the arguments in the original motion, "including those adopted by reference from the motion of Defendants Yanez and Reyes, and in his Objection." Id. The

defendant also adopts the arguments made by Hidalgo-Sanchez in a motion he filed on October 19, 2019, asking the court to sever Hidalgo-Sanchez's trial from Gomez's based on the events that occurred at the October 18, 2019 final pretrial conference. Id. (referencing Hidalgo-Sanchez motion to sever, Dkt. No. 602).

The memorandum concludes with one paragraph of argument:

> Further, Defendant Williams points out that the distinction between Counts One and Two of the Indictment has never been greater and the risk of confusion between the counts and defendants has never been more necessary. The government intends to introduce evidence against Mr. Williams that has little or no relevance to the other defendants, and vice versa. While there is one witness on the government's list that was allegedly a member of both conspiracies (Bryan Banks), [t]his writer has no reason to believe that his testimony on each conspiracy will overlap in any significant way so as to burden the court or the government if he has to testify in two trials instead of one. And the government's exhibit list seems to be organized in such a way so as to address the allegations against Defendant Williams during the first two (give or take) days of trial and then never mention him again. Defendant Williams sees no logical reason why this needs to be done in one long trial instead of two shorter ones.

Id. at 2.

II.    Analysis

The court has noted that the defendant's objection, dkt. no. 391, made no mention of any error on Judge Jones's part in ruling on his severance motion. It did not acknowledge that ruling. In his recent memorandum, the defendant claims that his severance motion never has been fully addressed. This is not correct, and arguably the defendant waived his objection to Judge Jones's denial of the severance motion by failing to mention that ruling in the objection to the ruling on his motion to dismiss. Nonetheless, in an abundance

of caution, the court will proceed as if the objection at Dkt. No. 391 constitutes an objection to Judge Jones's denial of the defendant's motion to sever.

Contrary to the defendant's assertion that his motion to sever never has been addressed, Magistrate Judge Jones denied the motion on March 22, 2019. Dkt. No. 381. Rule 59(a) of the Federal Rules of Criminal Procedure allows a party to object to a magistrate judge's ruling on a non-dispositive motion within fourteen days of the order. The rule defines a non-dispositive motion as one that "does not dispose of a charge or defense." Rule 59(a).

A motion to sever is a non-dispositive motion, because it does not dispose of a charge or offense. See United States v. Dyer, Case No. 15-cr-115-JPS, 2016 WL 6988843, at *3 (E.D. Wis. Nov. 29, 2016) ("Federal Rule of Criminal Procedure 59(a) governs the district court's review of a magistrate judge's ruling on a non-dipositive matter, such as Defendants' motions to sever."). Rule 59(a) requires a district court to modify or set aside a magistrate judge's ruling on a non-dispositive motion (or part of such a ruling) only if the ruling is "contrary to law or clearly erroneous." Fed. R. Crim. P. 59(a). See also Hall v. Norfolk Southern Ry. Co., 469 F.3d 590, 595 (7th Cir. 2006); United States v. Kaquatosh, 227 F. Supp. 2d 1045, 1049 (E.D. Wis. 2002) (applying clear error standard to magistrate judge's grant of a motion to sever); United States v. Schneider, Case No. 07-cr-41, 2007 WL 2407060, at *2 (E.D. Wis. Aug. 20, 2007) (applying clear error standard to magistrate judge's grant of defendant's motion to sever); United States v. Bailey, No. 14-CR-78, 2015 WL 687490, at *1 (E.D. Wis. Feb. 18, 2015) (applying clear error standard of review

to defendant's appeal of magistrate judge's order on motion for disclosure of Brady material); Dyer, 2016 WL 6988843, at *3 (applying clear error standard to magistrate judge's order denying motion to sever); United States v. Luedke, Case No. 16-cf-175, 2018 WL 2059556, at *4 (E.D. Wis. May 2, 2018) (applying clear error standard to review of magistrate judge's grant of a motion to sever). This court will reverse Judge Jones's order denying the defendant's motion to sever only if it was clearly erroneous or contrary to law.

Defendant Yanez, whose arguments the defendant adopted by reference in his motion to sever, asked both for severance of counts under Rule 8(a) and severance of defendants under Rule 8(b). Rule 8(a) says that an indictment may join "a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." "In assessing the propriety of joinder under [Rule 8(a)], [the court] look[s] solely to the face of the government's indictment and not to any evidence ultimately presented at the defendant's trial." United States v. Alexander, 135 F.3d 470, 475 (7th Cir. 1998). "[Rule 8(a)] allows the joinder of offenses that 'are of the same or similar character.'" United States v. Jackson, 208 F.3d 633, 638 (7th Cir. 2000). "Judicial efficiency motivates a strong policy preference in favor of joinder and offenses should be compared for categorical, not evidentiary, similarities." Id. (citing Alexander, 135 F.3d at 476).

Although Judge Jones conceded that Yanez (and, by adoption, the defendant) had referenced Rule 8(a) in his severance motion, he concluded that

in a multi-defendant case, "Rule 8(a) simply does not apply . . . ." Dkt. No. 381,

quoting Michael Monico & Barry Spevack, *Federal Criminal Practice: A Seventh*

*Circuit Handbook*, §315 (2018).

The 2019 edition of the treatise Judge Jones cited, however, is less

definitive. That version provides:

> The [Seventh Circuit] has stated in several cases that when there are multiple defendants Rule 8(b) governs joinder of defendants and counts, and hence Rule 8(a) simply does not apply in a multi-defendant case. Recently, the court has admitted that it has not always applied that principle consistently, and that outside jurisdictions have challenged that view. The resolution of this point is presently unresolved. *See United States v. Ross*, 510 F.3d 702, 710-11 & n. 2 (7th Cir. 2007).

Michael Monico & Barry Spevack, *Federal Criminal Practice: A Seventh Circuit*

*Handbook,* §315, page 7-60 (2019).

The footnote in <u>Ross</u> to which the treatise refers lists four Seventh Circuit

cases; cases from the D.C., Third, Eighth, Second and Fifth Circuits; the

Moore's Federal Practice treatise; and the LaFave, Israel and King criminal

procedure treatise as authorities for using Rule 8(b) to analyze misjoinder

claims in multi-defendant cases. The footnote cites the court's own decision in

<u>United States v. Lanas</u>, 324 F.3d 894, 899-900 (7th Cir. 2003), as well as

decisions from the Sixth, Eighth and Third Circuits and Wright's Federal

Practice, as authorities challenging that method of analysis. <u>Ross</u>, 510 F.3d at

710 n.2. The <u>Ross</u> court concluded that it did not need to decide whether the

counts in that case were mis-joined under Rule 8(a) or whether Rule 8(a)

applied in a multi-defendant case, because the defendant could not show that he was prejudiced by the district court's refusal to sever. Id. at 710-11.

Because the Seventh Circuit law is unsettled regarding whether Rule 8(a) applies in a multi-defendant case, Judge Jones's conclusion that it did not *may* have constituted error. Even if the court assumes that it was error, and that the error was "clear," however, the court would not sustain the defendant's objection because it agrees with the conclusion Judge Jones reached.

Under Rule 8(a), the indictment may join offenses if they are "(1) of the same or similar character; (2) based on the same act or transaction; *or* (3) connected with or part of a common scheme or plan." Id. at 710 (citing Rule 8(a)) (emphasis added). The rule states the options in the disjunctive—joinder is proper if the offenses are of the same or similar character, *or* if they are based on the same act or transaction, *or* if they are connected by a common scheme or plan.

As to the requirement that offenses be of the same or similar character, the Seventh Circuit has held that if the offenses "are of like class, although not connected temporally or evidentially, the requisites of proper joinder should be satisfied so far as Rule 8(a) is concerned." United States v. Coleman, 22 F.3d 126, 133 (7th Cir. 1994). The Seventh Circuit illustrated this "like class" idea with analogies: "Two armored car robberies committed months apart are offenses of same or similar character; possessing five kilograms of cocaine and defrauding a bank, even if they occur on the same day, are not." Id. The court

explained the reason for the requirement of "categorical, not evidentiary, similarities," id. at 133:

> Rule 8 joinder is based solely on the face of the indictment and is accordingly a question of law, subject to plenary appellate review. *See United States v. Shue*, 766 F.2d 1122, 1132 (7th Cir. 1985); *see generally United States v. Werner*, 620 F.2d 922, 926-29 (2d Cir. 1980). The initial decision to join is made (and properly reviewed) without real insight into the actual mutual relevance of the individual offenses and their surrounding circumstances, which only crystallizes with the presentation of evidence at trial. An uncomplicated inquiry and review of initial joinder is the natural product of Rule 8, and of the practicalities of litigation, and makes sense so long as authority remains for monitoring the continued appropriateness of a joint trial as proceedings go forward, further developments unfold and evidentiary and other sources of prejudice can be better observed and analyzed.

Id. at 134.

This "uncomplicated inquiry" into the indictment in this case requires the conclusion that Counts One and Two are properly joined under Rule 8(a). Both counts charge the defendants with conspiring to possess with intent to distribute drugs between January 2016 and June 2017. Both charge conspiracy to possess with intent to distribute heroin and cocaine. These are offenses "of like class." The elements the government must prove to convict on Count One are the same elements the government must prove to convict on Count Two. While Count One names some defendants who are not named in Count Two and vice versa, and while Count One includes methamphetamine as one of the controlled substances while Count Two does not, these differences are not enough to render the offenses of different classes. This court finds that Counts One and Two are properly joined under Rule 8(a).

Judge Jones analyzed the defendant's motion to sever (and the motions filed by co-defendants Yanez and Reyes) under Rule 8(b), which governs improper joinder of defendants. That rule allows the indictment to charge two or more defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." The Seventh Circuit has construed Rule 8(b) "broadly to allow liberal joinder in order to enhance judicial efficiency." United States v. Stillo, 57 F.3d 553, 556 (7th Cir. 1995) (citing United States v. Curry, 977 F.2d 1042, 1049 (7th Cir. 1992), cert. denied, 507 U.S. 947). "It is well settled that a conspiracy charge is a proper basis for joinder under Rule 8(b) . . . ." Id. at 557. See also, United States v. Diaz, 876 F.2d 1344, 1355-56 (7th Cir. 1989). The question of whether the defendants are alleged to have participated in the same transaction or series of transactions relates to whether the transactions "are pursuant to a common plan or scheme . . . which is to say (in the usual case) that the acts or transactions are parts of a single conspiracy . . . ." United States v. Velasquez, 772 F.2d 1348, 1353 (7th Cir. 1985) (citations omitted).

> The indictment need not charge a single overarching conspiracy, provided the separate conspiracies it charges arise from a common plan or scheme and so could alternatively have been charged as a single conspiracy. But the mere fact that two conspiracies have overlapping memberships will not authorize a single indictment if the conspiracies cannot be tied together into one conspiracy, one common plan or scheme.

Id.

Judge Jones found from his review of the indictment that there was more than overlapping membership (Avina and Banks) connecting the conspiracy in

Count One with the conspiracy in Count Two. The two conspiracies cover the same period—January 2016 to June 2017. They cover the same geography— the Eastern District of Wisconsin. As noted in the court's analysis of Rule 8(a) joinder, they cover the same class of offenses—conspiracy to possess with intent to distribute controlled substances (heroin and cocaine in both counts). Judge Jones's finding that the defendant was not mis-joined under Rule 8(b) is not clearly erroneous or contrary to law.

In his recent memorandum in support of the motion Judge Jones denied, the defendant asserts that the government "intends" to introduce evidence against *him* that won't relate to the other two defendants going to trial and intends to introduce evidence against *them* that won't relate to him. Dkt. No. 607 at 2. He says that testimony from one of the two overlapping defendants— defendant Banks—won't be so similar as to all three defendants that it would "burden the court or the government if he has to testify in two trials instead of one." Id. He assumes that the government will seek to admit its exhibits in the order in which it placed them on its exhibit list, and concludes from this assumption that the government will "address the allegations against [him] during the first two (give or take) days of trial and then never mention him again," and questions why the government can't do this in two shorter trials instead of one long one. Id. Finally, he adopts the arguments co-defendant Hidalgo-Sanchez made in support of severance based on the events that occurred at the October 18, 2019 pretrial conference.

None of these arguments demonstrate that Judge Jones's ruling was clearly erroneous or contrary to law. For that reason alone, the court will overrule the defendant's objection. But for the sake of clarity and thoroughness, the court will address them.

None of the defendant's pleadings regarding severance have cited cases or rules. But his argument about overlapping evidence or the lack of it sounds like a request for relief from prejudicial joinder under Fed. R. Crim. P. 14(a). That rule states that "[i]f the joinder of offenses or defendants in an indictment appears to prejudice a defendant . . . , the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." As the Seventh Circuit explained in <u>Coleman</u>, Rule 14 plays a different role than Rule 8. After discussing the fact that Rule 8's simple joinder analysis "makes sense so long as authority remains for monitoring the continued appropriateness of a joint trial as proceedings go forward," the Seventh Circuit explained that "Rule 14 provides such authority, and pursuant to *it* a flexible examination of the nature of the evidence and ties between the acts underlying the offenses charged seems most appropriate." <u>Coleman</u>, 22 F.2d at 134 (emphasis in the original).

> As a case proceeds beyond the indictment stage, such an examination becomes less speculative and more facilitative of the trial judge's task of calculating the actual risk of unfair prejudice that a joint trial would entail. As a result, severance decisions under Rule 14 are inevitably discretionary matters best informed by the observations and experience of the overseeing judge who is also singularly situated to accurately assess the cost of separate trials.
>
> Because Rule 8 does represent a strong preference, in language and in policy, for broadly construing the propriety of joinder as an initial

matter, district courts must not shirk their duties under Rule 14. They should vigilantly monitor for developing unfairness and should not hesitate to order severance at any point after indictment if the risk of real prejudice grows to large to justify whatever efficiencies a joint trial does provide.

\* \* \*

Indeed, when offenses are joined because of their "same or similar character," the risk of unnecessary unfairness infiltrating the join trial is elevated. Unlike instances of joinder of offenses based on the same or closely connected acts or transactions, "[t]here is no comparable saving of trial time when offenses that are related only by being of the same type are joined, since the offenses are usually proven by different bodies of evidence [and], when totally unrelated, similar offenses are joined, defendant faces a 'considerable risk' of prejudice." 8 Moore's Federal Practice ¶ 8.05[4] (citations omitted). In such cases, the district courts should be especially watchful for possible jury confusion, illegitimate cumulation of evidence or other sources of prejudice not worth the reduced efficiency gains of a joint trial.

Id. (case citations omitted).

So even when joinder is proper (as it is here), a district court has the discretion to sever if the joinder would prejudicial. But "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." Zafiro v. United States, 506 U.S. 534, 538-39 (1993).

When defendants have been properly joined under Rule 8(b), "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendant's, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539. . . . "A defendant must demonstrate that the denial of severance caused him 'actual prejudice' that deprived him of his right to a fair trial; it is insufficient that separate trials would have given a defendant a better opportunity for an acquittal." *United States v. Rollins*, 301 F.3d 511, 518 (7th Cir. 2002) (citations omitted); *see also Zafiro*, 506 U.S. at 540. . . .

United States v. Souffront, 338 F.3d 809, 828 (7th Cir. 2003) (quoting Zafiro, 506 U.S. at 538-39).

The defendant complains about being tried with other defendants. The fact that he is being tried with other defendants, standing alone, is not enough to justify severance; it does not demonstrate a serious risk that the joint trial would compromise his trial rights or prevent the jury from reliably determining his guilt or innocence.

Nor does the defendant's adoption of Hidalgo-Sanchez's argument that the danger of Gomez's alleged threat toward one of the prior judges on the case justify severance. Hidalgo-Sanchez conceded that at the final pretrial conference, the court stated that it would not permit Gomez or the government to introduce evidence about the allegations that Gomez made a threat against a judge. Dkt. No. 602 at 2. He argued, however, that the jury still could learn about the alleged threats in several ways. First, he theorized that the government could present evidence that "opens the door" to Gomez putting in evidence about the alleged threat. Id. Second, he noted that despite the court's holding at the final pretrial conference, Gomez "may nevertheless attempt to testify about the incident." Id. In the second instance, he argued, it would not be enough for the court to strike Gomez's testimony; the court would have to declare a mistrial, which would delay further the defendant's right to his day in court. Id.

The government responded that it had "clearly and consistently" stated that it didn't intend to introduce evidence of the alleged threat. Dkt. No. 604 at

3. It reiterated that the court has barred the government—or Gomez—from presenting such evidence, and notes that the defendant has acknowledged this. Id. The government asserted that the defendant's concerns were, at this point, "speculative at best." Id. The government also questioned whether the defendant would be prejudiced even if the jury did somehow hear about the threat allegations, noting that the issue isn't whether the defendant would be prejudiced by being joined with Gomez for trial, but whether the prejudice would be so serious as to compromise his constitutional rights or prevent the jury from reliably determining his guilt or innocence. Id. The government noted that there was no evidence that Hidalgo-Sanchez knew anything about Gomez's alleged plot, so the jury could not infer the *defendant's* guilt from *Gomez's* misconduct. The government asserted that this is especially true if it is *Gomez* who references the allegations only for the purpose of refuting them. Id. at 3-4. The government argued that juries must consider the evidence separately as to joined defendants all the time, and that we presume they follow the court's instructions that they do so. Id. at 4. Finally, as to the defendant's argument that a mistrial would delay his access to justice, the government noted that severance would do the same. Id. at 4 n.2.

The court finds, as it did regarding Hidalgo-Sanchez, that there is no basis to grant this defendant's motion to sever. The court has ruled that neither the government nor Gomez may present evidence about, or even refer to, any allegations that Gomez threatened a judge or the judge's family. It is premature for the court to sever the defendant from a properly-joined trial on

the chance that someone might violate this court's orders and mention something the court has barred the parties from mentioning. This defendant is even less likely than Hidalgo-Sanchez to be prejudiced even if the jury were to become aware of the alleged threat—this defendant is not in custody (Dkt. No. 76), whereas Hidalgo-Sanchez is being held in the same pretrial holding facility as Gomez. This defendant, as he has pointed out, is charged in a different count than Gomez. Even if the jury were to learn of Gomez's alleged threat (which this court has no intention of allowing), there is no reason why the court's instruction to the jury that it must consider the evidence separately as to the defendant would not avoid any possible prejudice.

If the court were to grant this motion to sever, it is certain that the defendant's case would be delayed. There is only a possibility—and an unlikely one—that the prejudice the defendant fears will happen during the November trial. If that unlikely possibility materializes, and the government, Gomez or any other defendant violates this court's ruling, defense counsel may seek relief at that time. Depending on the degree of prejudice, he may ask for a limiting instruction (which would not delay the trial) or ask for a mistrial (which, if granted, would delay the trial). But there is no reason for the court to take such a drastic prophylactic measure under the circumstances.

The court will continue to monitor the case for developing prejudice, as Rule 14 and the Seventh Circuit require it to do. But at this point, there is no indication that the prejudice created by a joint trial of the defendant, Gomez and Hidalgo-Sanchez would be so great that it would put the defendant's trial

rights at risk or prevent the jury from reliably determining his guilt or innocence.

III.    Conclusion

The court **OVERRULES** the defendant's objection to Judge Jones's order denying his motion to sever. Dkt. No. 391.

Dated in Milwaukee, Wisconsin this 25th day of October, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**